UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

DC International, Inc.                                                      Civil Action No. 09-1196

versus                                                                        Judge Tucker L. Melançon

Zurich-American Insurance Group                 Magistrate Judge C. Michael Hill

**MEMORANDUM RULING**

      Before the Court is a motion for summary judgment filed by defendant and counter-claim plaintiff, Zurich-American Insurance Company ("Zurich"), against plaintiff and counter-claim defendant, DC International, Inc. ("DC") [Rec. Doc. 24], DC's memorandum in opposition, *R. 27,* and Zurich's reply memorandum, *R. 35.* For the reasons that follow, the motion will be denied.

**I. Background**

      This action involves a workers' compensation insurance policy issued by Zurich to DC ("the Policy"). *R. 1*. DC is a service company that provides trained and qualified personnel to domestic and worldwide customers, primarily oil companies, both on land and offshore. *R. 27, Exh. 1, Aff. Of Hebert.* DC represents that the company provides personnel that their customers do not perform themselves but need in order to support their operations, such as "logistics coordinators, health, safety and environmental compliance representatives and emergency medical technicians/paramedics." *Id.* In its Petition, DC characterizes itself as providing "low risk support services to the oil and gas industry," including "dispatching and logistical coordination, health, safety and environmental compliance inspections, shore based office functions." *R. 1-1, ¶ 5.*

      DC provides the following factual allegations which Zurich does not dispute. Louisiana Companies was the insurance broker and agent for DC in 2007 and at all times

relevant to this lawsuit. *Id. at ¶ 9; R. 27.* During the fall of 2007, while DC was in the process of obtaining various types of insurance coverages, Zurich solicited DC's insurance business through Louisiana Companies. *Id.* Zurich indicated that it was considering offering a package of insurance coverages to DC, but before writing the coverage, Zurich desired to investigate whether DC was a "labor provider for oil and gas exploration activities." *Id. at ¶ 10.* Louisiana Companies informed DC that if Zurich determined it was a labor provider, as opposed to a service company engaged in low risk activities, Zurich would not be interested in providing insurance coverage to DC. *Id.* On October 10, 2007, DC was informed by Louisiana Companies that Zurich had completed its investigation and had decided to offer a package of insurance coverages to DC. *Id. at ¶ 11.* On October 14, 2007, Zurich issued and bound several categories of insurance coverage for DC, including commercial general liability, automobile liability, umbrella coverage and workers compensation, for agreed upon base premium rates. *Id. at ¶ 12.*

On or about October 23, 2007, through Louisiana Companies, DC requested a meeting with Zurich to discuss Zurich's audit procedures. *Id. at ¶ 13.* At the December 17, 2007 meeting, Zurich mentioned to DC that it may not agree that DC should be classified as a "service company" rather than a "labor company" for its workers compensation coverage. *Id.* Zurich indicated it would review its position and make a final determination. *Id.*

DC received a notice from Zurich on April 30, 2008, stating that DC's classification would be changed to a "labor company" of oil and gas drilling workers and the premium rates for its workers compensation policy would be increased, retroactively. *Id. at ¶ 14.* Zurich and Louisiana Companies presented DC with a document seeking its consent of the proposed retroactive changes. *Id. at ¶¶ 15, 16.* DC refused to consent to any retroactive changes and thereafter canceled all of its insurance policies with Zurich and ceased its

relationship with Louisiana Companies. *Id.* On May 29, 2009, DC received a demand from Zurich for additional premiums in excess of $351,661.00 based on Zurich's retroactive reclassification of DC's business activities. *Id.* at ¶ 16.

DC filed a petition in state court against Zurich and Louisiana Companies alleging breach of the contractual and fiduciary relationship between DC and Zurich by Zurich's actions of retroactively increasing the premium that DC paid for its Policy. *Id.* Zurich removed plaintiff's Petition to this Court on grounds of diversity of citizenship, arguing that the only non-diverse defendant, Louisiana Companies, was improperly joined. *Id.* DC filed a motion to remand which the Court denied, holding that the Petition failed to state a cognizable cause of action against Louisiana Companies. R. 17. Zurich answered the Petition and asserted a counter claim against DC, seeking recovery of unpaid premium in the amount of $351,666.00. R. 5.

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*en banc*). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id*. If the moving party fails to carry this burden, his motion must be denied. If he succeeds,

however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[1] *Id*. at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

      If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

---

[1] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the nonmoving party of these essential elements renders all other facts immaterial. *Id.* at 322.

### III.  Analysis

In its motion for summary judgment, Zurich asserts that DC's Petition for breach of contract should be dismissed based on the plain language of the Policy which states that the premium is an "estimate" and provides for an audit to determine the final premium amount.  *R. 24, Exh. A, Policy*.  "Part Five - Premium" of the Policy provides in pertinent part:

PART FIVE PREMIUM

\*\*\*

B.      Classifications

Item 4 of the information page shows the rate and premium basis for certain business or work classifications.  These classifications were assigned based n an estimate of the exposures you would have during the policy period.  If you actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

\*\*\*

D.      Premium Payments

You will pay all premium when due.  You will pay the premium even if part or all of a workers compensation law is not valid.

E.      Final Premium

The premium shown on the Information Page, schedules, and endorsements is an estimate.  The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classi-fication and rates that lawfully apply to the business and work covered by this policy.  If the final premium is more than the premium you paid to us, you must pay us the balance.  If it is less, we will refund the balance to you.  The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

>    1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final premium will not be less than the pro rata share of the minimum premium.
>    2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increase by our short-rate cancellation table and procedure. Final premium will not be less than the minimum premium.
>
> G.   Audit
>
> You will let us examine and audit all you records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data.  We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.
>
> *Id*.

In further support of its motion, Zurich has attached the affidavit of Philip A. Scimemi, Zurich's Premium Audit Specialist, who states that on December 6, 2007, he undertook a preliminary review of the records of DC, including "the payroll records, payroll tax reports and other information" provided by DC. *R. 31., Exh. 1*. Under the applicable rules of the National Counsel on Compensation Insurance, Scimemi concluded that additional premium was due under the Policy as a result of the re-classification of employees and agents of DC, as follows: (1) workers that had been classified by DC as "'radio and television broadcasting personnel' were determined to be personnel engaged in dispatching and related work on onshore and offshore oil and gas facilities;" (2) workers that had been classified by DC as "'hospital or professional employees' were determined to be personnel engaged in safety and EMT operations on onshore and offshore oil and gas facilities;" and (3)  workers that had been classified by DC as "'outside sales employees' were determined to be engaged in safety training and compliance operations on onshore

and offshore oilfield facilities." *Id.* The affidavit of Zurich's Premium Audit Reviewer, Lynne Szollosy, confirms that Scimemi's reclassification resulted in an additional $351,661.00 being added to the Policy premium. *Id.* at Exh. 2.

DC asserts that Zurich's motion is premature as it was filed before the parties' FRCP 26(f) Conference, and therefore, before any discovery has been allowed to be conducted. *R. 27.* DC contends that there are substantial issues of material fact and law in dispute related to Zurich's audit and the reclassification of DC from a "service company" to a "labor company" which occurred after Zurich had issued the Policy. Contrary to Scimemi's affidavit that his re-classifications of DC's workers were based on the classifications under the rules of the National Counsel on Compensation Insurance, DC represents that in its 17 year history, Zurich is the only insurance company that has attempted to re-classify its employees to the equivalent of oil and gas drilling workers. *Id., Exh. 1, Aff. Of Hebert.* DC contends that discovery is necessary to determine evidence related to Zurich's re-classification of DC to a "labor company."

"Rule 56 does not require that any discovery take place before summary judgment can be granted; if a party cannot adequately defend such a motion, Rule 56(f) is his remedy." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990). Rule 56(f) provides that if a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order. *See* Fed.R.Civ.P. 56(f). When a party files a brief opposing the motion for summary judgment and informs the court of the need for additional discovery, the brief can serve "as the functional equivalent of an affidavit." *Washington* at 1285 (noting that an "'equiva-

7.

lent statement, preferably in writing'" can be considered a Rule 56(f) motion) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986)). Rule 56(f) discovery motions are "broadly favored and should be liberally granted." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir.2006). The purpose of Rule 56(f) is to "'to safeguard against a premature or improvident grant of summary judgment.'" *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 n. 5 (5th Cir.2002) (quoting *Washington* at 1285). To obtain relief under Rule 56(f), the nonmovant "must show: (1) why he needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *Adams v. Travelers Indem. Co. of Conn.*, 465 F .3d 156, 162 (5th Cir.2006).

While DC did not file a formal Rule 56(f) motion, it argues that disposition of the motion would be premature as the Rule 26(f) conference has not yet been held, and therefore, no discovery has taken place in order to refute Zurich's reclassification of DC's workers.[2] Based on the Court's review of DC's opposition brief as well as the foregoing jurisprudence, DC has met the Rule 56(f) standard. Summary judgment is not appropriate until after the plaintiff has had a fair opportunity for discovery of information essential to its opposition to defendant's motion. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Thus, DC is entitled to conduct discovery related to Zurich's re-classification of DC from a "service company" to a "labor company" and Zurich's Motion for Summary Judgment will be denied without prejudice as premature. Zurich may reassert its motion once the parties have had an opportunity to conduct discovery.

---

[2] The Court also notes that where the nonmoving party contends that the evidence it could offer to create a genuine issue for trial is in the exclusive possession of the moving party, as in this case, "a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir.1991).